IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KELVIN O. AGOSTO-HERNANDEZ,

Plaintiff,

v.

PRWIRELESS PR, LLC, et al.,

Defendants.

CIVIL NO. 21-1382 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Kelvin O. Agosto Hernández ("Plaintiff" or "Agosto") brings forth the present case against co-Defendants PR Wireless PR LLC, Sprint PR LLC and T-Mobile Puerto Rico (collectively "T-Mobile") alleging discrimination and retaliation in his employment based on his sexual orientation and eventually his dismissal, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Plaintiff additionally invoked the Court's supplemental jurisdiction to entertain state law claims pursuant to Law No. 100 ("Law 100"), P.R. Laws Ann. tit. 29 §146, prohibiting discrimination in employment due to sexual orientation; Law No. 69 ("Law 69"), P.R. Laws Ann. tit. 29 §1321, prohibiting discrimination in employment due to gender; Law No. 115 ("Law 115"), P.R. Laws Ann. tit. 29 §194a, for retaliation; Law No. 80 (Law 80"), P.R. Laws Ann. tit. 29 §185a, prohibiting unjust dismissals; and damages under Article 1536 of the Puerto Rico Civil Code ("Article 1536"), P.R. Laws Ann. tit. 31 §10801 (2020).

Plaintiff, a T-Mobile's retail sales employee who is openly homosexual, alleges that he was subjected to a hostile work environment and ultimately fired after complaining to

his supervisor, Brenda Villalobos ("Villalobos") in early 2020, about a sales dispute with his co-worker, Jaime Barreto ("Barreto"), which ended up in a particular sale being awarded to Plaintiff instead of Barreto. After this, Plaintiff proffers that Barreto, who is also homosexual, began a campaign against him, making derogatory jokes and comments on the basis of his sexual orientation, and that another co-worker, Jeruel Morales ("Morales") and Villalobos participated in these actions. Plaintiff avers he complained to Villalobos, as his supervisor, on a number of occasions and the company failed to take any corrective action.

On August 14, 2020, an incident occurred in a kiosk between Plaintiff and Morales, which resulted in Morales calling Barreto to complain about Plaintiff's actions. Barreto sent Villalobos an email about the matter, which alleged Plaintiff had incurred in sexually explicit behavior towards Morales and that the situation had been going on for some time. T-Mobile investigated and several of Plaintiff's co-workers confirmed that Plaintiff made inappropriate, sexually charged comments addressed to several employees on a regular basis, including in a group chat the employees had. As a result of this investigation, Human Resources concluded that Plaintiff had engaged in sexual harassment in violation of company's policy and dismissed Plaintiff on August 25, 2020.

Before the Court now is T-Mobile's "Memorandum of Law in Support of Motion for Summary Judgment" (Docket No. 36), as well as Plaintiff's Opposition thereto (Docket No. 54), T-Mobile's Reply (Docket No. 67), and Plaintiffs' Sur-Reply (Docket No. 82).

T-Mobile proffers that Plaintiff cannot prevail on any of his Title VII claims and urges their dismissal. As to the hostile work environment, T-Mobile avers the conduct experienced by Plaintiff was not unwanted because he participated in the harassment he

Kelvin O. Agosto Hernández v. PRWireless PR, LLC, et al.
Opinion and Order
Civil 21-1382 (CVR)
Page 3

now complains of and further, Plaintiff failed to report to Human Resources or the company's President, as provided by company policy, that he was a victim of homophobic comments or harassment. As to the termination, T-Mobile argues it terminated Agosto's employment after conducting a diligent investigation where interviews of several co-workers corroborated Morales' version of Plaintiff's open participation in harassing conduct towards his co-workers, in open violation of company policy which he was aware of. Regarding the retaliation, T-Mobile says Plaintiff never participated in protected conduct by complaining to the company about any harassing conduct. Even if the *prima facie* elements for the different claims under Title VII were met, T-Mobile proffers Plaintiff cannot show pretext as to any of them as it has shown a legitimate non-discriminatory reason for its actions which Plaintiff cannot rebut. In addition, T-Mobile urges the Court to dismiss the state law claims because they were waived and their federal counterparts dismissed, and that the damages claim under Article 1536 cannot prosper as a matter of law.

Plaintiff contends in his opposition that he has met his *prima facie* burden as to all federal claims and that there are issues of fact that prevent summary disposition of his claims. Plaintiff asserts that there are reasonable inferences to be made in his favor as to the discrimination and retaliation claims, and T-Mobile's reason for his termination was a pretext for discrimination due to his sexual orientation. Plaintiff offers no opposition to the request for dismissal of the state law claims.

For the reasons explained below, T-Mobile's Motion for Summary Judgment is GRANTED.

---

## STANDARD

Summary judgment is appropriate if "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a) and (c). Pursuant to the explicit language of the rule, the moving party must establish this two-fold element. Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed material if it could potentially affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in

numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts" via a short and concise statement. Loc. Rule 56 (c). If they so wish, they may submit a separate statement of additional facts.

Time and again, the Court of Appeal for the First Circuit has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-26 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is - and what is not - genuinely controverted.'" Calvi v. Knox Cnty, 470 F.3d 422, 427 (1st Cir. 2006)). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Loc. Rule 56(e); Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448 (1st Cir. 2022).

The Court finds Plaintiff's Opposition to be non-compliant, on several levels. As previously mentioned, the Local Rules require that the party in opposition must submit a short statement either admitting, denying, or qualifying and submit the opposing party's proposed fact, together with a corresponding citation to the record. Plaintiff bases his opposition to almost all of T-Mobile's proffered facts with evidence denying Uncontested Fact Nos. 37, 45, 58, and 75. That evidence, in turn, was unduly lengthy and argumentative, and oftentimes, irrelevant to the fact offered. For example, the proffered opposition Uncontested Fact No. 58, was two (2) pages long and consisted of over twenty

(20) sentences, not counting citations. (Docket No. 54, Exhibit 1, pp. 8-10).  The same occurred with Uncontested Fact Number 75, whose opposition consists of two and a half (2 1/2) pages and forty (40) sentences, not counting the citations. (Id., at pp. 11-13).  The rules require a party to simply submit a "separate, short and concise" statement with a citation to the record in opposition to the moving party's facts, nothing more.  It is not the Court's duty to ferret through the summary judgment record to find evidence to make a party's case.[1]

Additionally, Plaintiff's denials in opposition were non-responsive and failed to controvert the facts in question.  For example, Defendant's proffered Uncontested Fact No. 58 stated: "[o]n August 14, 2020, Villalobos received the email from Barreto, and she immediately forwarded it to Ayala and Francisco Pérez. (Exhibit 4, 142: 3-23; 154; 12-20; Email from Barreto dated August 14, 2020, included as Exhibit 14; Exhibit 5, 30:14-25, 31:1.)"  This is a fact taken directly from Villalobos' deposition testimony, together with a copy of the email she received and then forwarded.  Plaintiff denies this factual assertion, giving a long-winded explanation of how, on another occasions, he had complained to Villalobos about Barreto's treatment of him and she had failed to escalate it, that he told Villalobos in the past that it was not a healthy working environment, and that Morales

---

[1]  "When the nonmovant fails to comply with the standards of Local Rule 56, 'a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated.'" Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 458 (1st Cir. 2022); Advanced Flexible Cirs., Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 521 (1st Cir. 2015) (quoting Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)).  Said rule, aptly referred to as an "anti-ferret rule," is intended to protect the district court from ferreting through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto to the court. CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008) ("The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute."). The First Circuit has emphasized the importance of following this local rule and has implored litigants to comply, or ignore it "at their peril." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007) (quoting Cabán Hernández, 486 F.3d at 7).

and Barreto had complained about Plaintiff's conduct before, among others. This lengthy presentation of additional facts, over twenty (20) sentences long, simply fails to controvert the testimony given under oath that on August 14, 2020, Villalobos received an email from Barreto and forwarded it to Ayala and Pérez on the same day. Whether or not T-Mobile failed to escalate any previous complaints made by Plaintiff and that Plaintiff complained to Villalobos in the past is not relevant to dispute this fact, which only deals with the receipt and dissemination of one specific email. Plaintiff's page-long denials to T-Mobile's proffered facts all suffered from this malady, and simply failed to controvert the facts in question. See Natal Pérez v. Oriental Bank & Tr., 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("A party's denial or qualification of a proposed fact must be strictly limited to the issue therein raised. Any additional information shall be included in a separate section in order to ease the Court's task.").

Plaintiff also submitted an additional statement of facts comprised of a whopping 187 facts in support of his opposition. These facts suffered from two (2) infirmities.

First, many of them were repetitive of the facts submitted by T-Mobile and were also unduly lengthy as they are comprised of several sentences. See, e.g., Docket No. 54, Exhibit 1, Plaintiff's proffered Fact No. 72 (10 sentences long), and Fact No. 99 (14 sentences long). Some of these facts might be relevant to understanding the case's background but many of them are simply not material to the task currently before the Court, which is to simply determine whether Plaintiff has raised a genuine issue of material fact that prevents the Court from finding in T-Mobile's favor.

Second, they were comprised of the same evidence used in Plaintiff to deny Uncontested Fact Nos. 37, 45, 58, and 75, but were now numbered. Thus, this additional

statement of facts was unnecessary and would require the Court to expend substantial amount of time and effort in sifting through Plaintiff's voluminous opposition. For these reasons, Plaintiff's set of facts was not considered.[2]

For the above reasons, the Court admitted most of T-Mobile's uncontested facts and did not consider Plaintiff's proffered facts.

## UNCONTESTED FACTS

1. Plaintiff began working at PR Wireless as a temporary employee of the temporary services agency TPIS on June 26, 2018, and later became a regular employee. D. Exhibit 1, p. 31, l. 10-12, 24-25; p. 32, l. 1-7, 23-25.

2. PR Wireless was later acquired by T-Mobile. D. Exhibit 1, p. 31, l. 10-21.

3. Upon commencement of his temporary employment in June 2018, Plaintiff took a series of trainings with PR Wireless, including one on sexual harassment. D. Exhibit 1, p. 38, l. 10-14; D. Exhibit 2.

4. Plaintiff was aware that PR Wireless had an Employee Manual which included the company's policies on sexual harassment, equal employment opportunity and rules and code of conduct, among others. D. Exhibit 1, p. 39, l. 11-25.

5. The equal employment opportunity policy states, among other things, that the Company will not discriminate in employment by reason of age, color, religion, sex, or any other legally protected condition. It also states that, if an employee understands that he is discriminated against due to a legally protected

---

[2] The Court also notes that the main portion of Plaintiff's Sur-Reply addressing the Title VII claims is simply a cut and paste of his Opposition, albeit shorter in length due to the Court's Order limiting the pages at Docket No. 78. Only the few initial pages dealing with compliance with the Local Rules and the Law 80 claims in the end address new matters raised in the Reply. The remainder and better part of Plaintiff's Sur-Reply is simply a shorter, copied and pasted version of the exact arguments, analysis and caselaw already contained in his opposition.

condition, he must inform the Vice President of Human Resources immediately and if no response is received within a reasonable time, he must go to the office of the President.  D. Exhibit 3, p. 3.

6. The sexual harassment policy provides that employees are responsible for notifying Management, the Evaluation Committee and/or the Department of Human Resources, about any act of sexual harassment against them or another employee; and for avoiding sexual harassment by making use of the complaint procedures established in the policy.  D. Exhibit 3, pp. 5-8.

7. The Employee Manual also includes that employees must maintain good conduct, cordial and respectful interpersonal relations with their supervisors, coworkers, clients, and others.  D. Exhibit 3, p. 11.

8. At all times during his employment, Plaintiff was very open about being a homosexual. D. Exhibit 1, p. 41, l. 21-25; p. 42, l. 1.

9. Approximately four (4) months after being hired, Plaintiff was appointed as a "Key Holder."  Key Holders are trusted sales employees who are given the keys to the stores or kiosks, and they oversee the location when there are no managers present. D. Exhibit 1, p. 22, l. 10-13; p. 23, l. 14-16.

10. In July 2019, Plaintiff was transferred to the kiosk located in Belz Outlets in Canóvanas and remained there until his termination in August 2020. D. Exhibit 1, p. 35, l. 22-25; p. 41, l. 17-20.

11. At all times during Agosto's employment, Villalobos was the Store Manager for the kiosks located in Plaza Río Hondo, Plaza Carolina, and Belz Outlets in

Canóvanas, and was Agosto's direct supervisor. D. Exhibit 1, p. 22, l. 14-19; p. 24, l. 3-10.

12. Héctor Ayala ("Ayala") was the Senior Human Resources Partner and Francisco Pérez ("Pérez") was the Director of Sales. D. Exhibit 5, p. 15, l. 1-6; p. 37, l. 17-18; D. Exhibit 6, p. 15, l. 18-19, 25; p. 16, 1-6.

13. Besides Agosto, other salespersons who worked at the Canóvanas kiosk from October 1, 2019, to August 2020, were: Barreto, Morales, Frances Ríos ("Ríos"), Jonathan Rivera ("Rivera"), Juan Figueroa ("Figueroa"), and Alondra Paola García. D. Exhibit 7, p. 37, l. 38.

14. The sales employees of the Canóvanas kiosk, including Agosto, Morales, Ríos, and Rivera had a group chat in WhatsApp named "Last Man Standing - 1785" that did not include the managers.  Villalobos created a formal group chat in WhatsApp named "Familia" with the company's sales employees she supervised to keep them informed of changes and operational matters of the store. D. Exhibit 7, p. 41, l. 1-25; D. Exhibit 8, p. 87, l. 9-14, 20-22; D. Exhibits 9 and 23.

15. In October 2018, around the time when both Plaintiff and Morales were recruited to work, Villalobos received a complaint about Plaintiff making comments of a sexual nature to Morales. D. Exhibit 4, p. 147, l. 8-10.

16. Villalobos escalated this issue to Ayala. D. Exhibit 5, p. 22, l. 5-13.

17. Although Morales and Plaintiff said that nothing had happened and they could work in the same store, Ayala took that opportunity to sit down with Plaintiff and go over the company policy, stressing very thoroughly the sexual

harassment policy, and discussed it item by item.  D. Exhibit 5, p. 23, l. 8-14; p. 29, l. 5-16.

18. In January 2020, Plaintiff and Barreto had a dispute regarding a sale that had been initially awarded to Barreto. D. Exhibit 1, p. 55, l. 23-25; p. 56, l. 1-23.

19. Plaintiff spoke with Villalobos about the situation regarding the sale because he understood the sale belonged to him.  She agreed that the sale should be awarded to Plaintiff and not Barreto.  She instructed Rivera, the store lead, to award the sale to Plaintiff. D. Exhibit 1, p. 57, l. 1-17, 23-24.

20. Barreto became upset that the sale was awarded to Plaintiff and sent him various messages indicating that he was "disappointed with him" and that he had lied to Rivera. D. Exhibit 1, p. 58, l. 1-9, 22-25; p. 59, l. 7-11; D. Exhibit 10.

21. On January 25, 2020, Plaintiff sent Villalobos a text message in a private chat with a screenshot of Barreto's messages to him regarding the sale. The messages sent by Barreto to him was related to the sale dispute and had nothing to do with Agosto's sexual orientation. D. Exhibit 1, p. 60, l. 19-25; p. 61, l. 1-3; D. Exhibit 11.

22. On April 6, 2020, Plaintiff texted Villalobos in a private chat that he had drafted a "hot letter" ("carta calientita") which he would use in case "they want to cause him harm" ("por si me quieren hacer daño").  D. Exhibit 4, p. 204, l. 21-25; p. 205, l. 1-7; D. Exhibit 12.

23. In response, Villalobos asked Plaintiff to let her see the letter and he wrote back, "I don't want to send it yet. I want it to stay between us for now",

indicating it was "not official", and "[l]et's keep it here just in case I have to send it." D. Exhibit 4, p. 205, l. 14-20; p. 206, l. 9-11; D. Exhibit 12.

24. The draft letter Plaintiff sent Villalobos was related to the sales dispute with Barreto, and was titled "Personal and labor harassment" D. Exhibit 4, p. 205, l. 24-25; D. Exhibit 13.

25.  Plaintiff admits that this letter did not make reference to any situation of sexual orientation discrimination or harassment.  D. Exhibit 1, p. 61, l. 18-19.

26. On August 11, 2020, an incident occurred during a work-shift in which Morales and Plaintiff were working together. Morales left the kiosk to call Barreto and told him that Plaintiff had made a gesture towards him as if he were going to grab Morales' genitals and had told Morales to let him "suck his dick."  Morales was very upset by this and left the kiosk to call Barreto because there were no supervisors or other employees.  D. Exhibit 7, p. 72, l. 23-25; p. 74, l. 1-9; D. Exhibit 15.

27. Morales told Barreto that Plaintiff had spent the entire morning at work making sexual comments to him and had also tried to grab his buttocks. D. Exhibit 7, p. 73, l. 21-25; p. 74, l. 4-6.

28. On August 14, 2020, Barreto drafted an email detailing the situation that Morales told him over the phone and sent it to Villalobos. D. Exhibit 7, p. 72, l. 20-25.  Villalobos received it the same day and forwarded it to her supervisors, Ayala and Pérez. D. Exhibit 14.

29. Barreto's email stated that Morales told him he was tired of Agosto's sexual conduct towards him, to the point of mentioning stalking and harassment,

stated that they had had meetings about this issue already and indicated that Plaintiff was constantly touching Morales and making comments to him of a sexual nature. D. Exhibit 14.

30. Upon receipt of Barreto's email, Ayala began an investigation. D. Exhibit 5, p. 32, l. 5-10.

31. Ayala requested Morales to write an email detailing the incident with Plaintiff, which he did on August 14, 2020. Morales' email related what happened the day if the incident, and included as well as a long laundry list of complaints against Plaintiff's conduct towards him and others in the work place. D. Exhibit 15.

32. On August 17, 2020, Ayala interviewed Barreto, Rivera, and Figueroa by phone. On August 18, 2020, he interviewed Ríos and Plaintiff. D. Exhibit 5, p. 32, l. 17-22.

33. After Ayala finished each interview, he asked the person to send him an email to reflect what they discussed over the telephone, and he requested a statement from them. D. Exhibit 5, p. 33, l. 23-25; p. 34, l. 1-9.

34. Barreto, Rivera and Ríos all confirmed Plaintiff's inappropriate behavior. D. Exhibit 17.

35. Figueroa indicated he had had no issues with Plaintiff and that had not witnessed any incidents between Plaintiff and other coworkers, but indicated others had complained to him about Plaintiff's behavior. D. Exhibit 17.

36. On August 18, 2020, Ayala interviewed Plaintiff. Ayala informed Plaintiff that the interview was about the behavior at the Canóvanas' kiosk and the work

environment in the store.  D. Exhibit 1, p. 128, l. 15-22; p. 132, l. 9-13; p. 135, 16- 24; D. Exhibit 5, p. 52, l. 22-24.

37.  Ayala asked Plaintiff how he felt at the kiosk, whether he used foul language and if he had encountered any problems with his co-workers.  He asked Plaintiff "[w]hat's the working environment like for you?" D. Exhibit 1, p. 132, l. 14-18; D. Exhibit 5, p. 59, l. 11- 14.

38.  Plaintiff responded that he felt good, that he had had problems with sales but that those things happened; that he did not use foul language at work; and he had never seen or been the subject of that kind of situation at the point of sale. D. Exhibit 1, p. 132, l. 19-25; D. Exhibit 5, p. 54, l. 4-12,17-23; p. 55, l. 21-22.

39.  During Plaintiff's interview with Ayala on August 18, 2020, he did not complain that he was a victim of homophobic comments made to him by Barreto, Villalobos or Morales or that he felt harassed due to his sexual orientation.  D. Exhibit 1, p. 133, l. 17-25; p. 134, l. 1-7.

40.  From the investigation that Ayala conducted in August of 2020, the only materials he had were the statements he received from the employees by email, and the interviews that he conducted.  D. Exhibit 17.

41.  On August 20, 2020, Ayala sent a report via email to the company's top managers, indicating that several employees had confirmed they witnessed sexual conduct by Plaintiff and that some of them were the object of that sexual conduct.   Ayala wrote that he understood the conduct described by the employees was creating a hostile work environment in the Canóvanas' kiosk that could be considered sexual harassment; that Plaintiff had received the

sexual harassment training, that due to the severity of the allegations and the evidence he had gathered, he understood that the conduct affected the normal functioning of the sales kiosk and the work's atmosphere. D. Exhibit 21.

42. Ayala recommended the termination of Plaintiff's employment upon considering the interviews and the statements he received from the store employees, which was the decision ultimately made by management.   D. Exhibit 5, p. 39, l. 8-21; D. Exhibit 21.

43. On August 25, 2020, Agosto was notified of his termination of employment due to sexual harassment during a phone call with Ayala, Villalobos and Pérez. D. Exhibit 1, p. 165, l. 4-6, 19-25; p. 166, l. 2-5, 7-17.

44. Plaintiff responded, "this is a complot and I want to defend myself", and wanted to provide them with the letter of complaint that he had sent Villalobos on April 6, 2020, but he was not given the chance.  D. Exhibit 1, p. 166, l. 18-25; p. 167, l. 1-3.

45. Plaintiff admitted that he never formally reported to Human Resources any harassing conduct against him due to his sexual orientation and never made a written complaint of sexual orientation harassment, homophobia or discrimination.  D. Exhibit 1, p. 149, l. 1-3; p. 150, l. 19-25; p. 151, l. 1-5.

46. In the WhatsApp group chat "Last Man Standing", Plaintiff and other employees engaged in highly charged sexual banter.  D. Exhibit 9.

# LEGAL ANALYSIS

## A.    Evidentiary issues.

The Court first addresses two (2) evidentiary issues raised by the parties.  The first one was raised by Plaintiff, when he denied a series of facts proffered by T-Mobile regarding a complaint Villalobos received back in October 2018, which alleged Plaintiff made comments of a sexual nature to co-worker Morales.  When approached by management, the parties smoothed things over and agreed to move on, but Plaintiff nevertheless received a refresher as to the company's sexual harassment policy at that time. Plaintiff objected to these facts, arguing they were inadmissible character evidence under Fed.R.Evid. 404(b) because prior acts may not be admitted to prove that a person later acted in conformity therewith.

T-Mobile's position is that the issue in 2018 over Plaintiff's alleged inappropriate sexual conduct is the same, comments of a sexual nature, and was directed at the same person as the 2020 complaint, Morales.  Furthermore, T-Mobile proffers the statement is not aimed at showing acts in conformity therewith, but rather that Plaintiff was aware of the company's sexual harassment policy and consequences of violating it.

Indeed, under Fed. R. Evid. 404(b)(2), such character evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." See Fed. R. Evid. 404 (b)(2). Therefore, the Court admits these proffered facts on the basis argued by T-Mobile, to wit, that they tend to show Plaintiff's prior knowledge and consequences about the sexual harassment policy.

The second evidentiary issue was raised in T-Mobile's Reply, where it complained that Plaintiff's denials of many of its proffered facts were based only on his uncorroborated and unsubstantiated deposition testimony, and should not be credited as they are self-serving and conclusory. The Court agrees with T-Mobile.

Although the First Circuit has recognized that testimonial evidence can, at times, be sufficient to raise a genuine issue of material fact, it has also found on many occasions that "conclusory statements without support in the record are not enough to survive summary judgment." Snell v. Neville, 998 F.3d 474, 490 (1st Cir. 2021); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010) ("[M]ere allegations" of fact confined exclusively to a motion or pleading "are not entitled to weight in the summary judgment calculus."); Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997) (party opposing summary judgment cannot "rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions, and affidavits to demonstrate either the existence or absence of an issue of fact"); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993) (material creating a factual dispute "must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth"); Goldman v. First Nat. Bank of Bos., 985 F.2d 1113, 1116 (1st Cir. 1993) (the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party"); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

In the case at bar, the Court finds Plaintiff has failed to properly controvert T-Mobile's proffered facts, as he simply offered blanket and unsubstantiated denials about his conduct towards his co-workers, and nothing more. Plaintiff cannot rebut summary judgment by simply putting forth only his own conclusory and self-serving word as a defense and no additional evidence. Accordingly, and considering the above case law, the Court did not consider Plaintiff's conclusory denials.

## B. Title VII.

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's sex, or based on their sexual orientation or transgender status. Ing v. Tufts Univ., 81 F.4th 77 (1st Cir. 2023); Bostock v. Clayton County, Georgia, 590 U.S. 644, 140 S. Ct. 1731 (2020).

In the absence of direct evidence of discrimination, a plaintiff must rely on the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under this general framework, Plaintiff has the initial burden of establishing a *prima facie* case of discrimination, and once done, the burden shifts to the employer to show a non-discriminatory explanation for its actions. LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842-44 (1st Cir. 1993). If the defendant provides such an explanation, the burden shifts back to the plaintiff, who must then bring forth competent evidence that the reason given is pretextual and that discriminatory animus really prompted the adverse action. Alston v. Town of Brookline Massachusetts, 308 F.Supp.3d 509, 531 (D. Mass. 2018).

Plaintiff brings forth two (2) different claims under Title VII, to wit, that he suffered from a hostile work environment and that his termination was due to discriminatory reason, both on the basis of his sexual orientation. He also raises a retaliation claim and several state law claims.

    1.  Hostile work environment.

Under Title VII, a plaintiff may establish a violation by demonstrating that an employer required them to work in a hostile or abusive environment. Franchina v. City of Providence, 881 F.3d 32 (1st Cir. 2018); Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S.Ct. 367 (1993). To establish a *prima facie* case for a hostile work environment claim under Title VII, an employee must plead: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) a nexus between the harassment and membership in the protected group; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment; (5) that objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. See Douglas v. J.C. Penney Co., 474 F.3d 10 (1st Cir. 2007). After a plaintiff does this, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for its adverse employment action. Id. at 14. If the employer clears this hurdle, the burden returns to the employee to show two things, that the proffered reason was mere pretext and that the true reason was prohibited discrimination. Id.

Plaintiff's position is that Villalobos, his supervisor, Morales, and other co-workers demeaned him because he was a homosexual. He avers Villalobos, Barreto and Morales,

would frequently comment that he was a little whore ("putita"), and a husband stealer; that they referred to him as queer ("pato") and faggot ("maricón") and made jokes that he jumped from one male ("macho") to the next, among others.  Plaintiff says he asked Villalobos to stop those jokes on a number of occasions as they made him uncomfortable, and later complained to Pérez, and nothing was done. While Plaintiff's complaints were never elevated to management, he argues an investigation was promptly commenced as soon as Morales, a heterosexual, complained about Plaintiff, an action which resulted in his dismissal.

While conceding that Plaintiff belongs to a protected class and satisfies the first element, T-Mobile proffers Plaintiff falters in the second element, as he cannot demonstrate the occurrence of unwelcome harassment insofar as he participated in it. This in turn, is also the basis of its non-discriminatory reason for Plaintiff's termination, to wit, that Plaintiff himself was engaged in harassment of his co-workers on a regular basis in direct contravention of company policy which he was well aware of.  As the *prima facie* burden is not an onerous one and it is directly related the T-Mobile's proffered reason for the discharge, the Court therefore jumps directly into the pretext analysis.  See Mojica v. El Conquistador Resort & Golden Door Spa, 714 F.Supp.2d 241, 258 (D.P.R. 2010) ("when the employer has asserted a legitimate nondiscriminatory reason for its adverse employment action …  the Court can assume without deciding that the plaintiff has made a *prima facie* showing in order to address pretext"); Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003); Ortíz-Rivera v. Astra Zeneca LP, 596 F.Supp.2d 231, 242 (D.P.R. 2009)(citing cases where the court bypassed the *prima facie* inquiry

after employer asserted a legitimate non-discriminatory reason for the employment action).

The crux of this case arose when Morales complained to Barreto over the phone about Plaintiff's conduct at the kiosk where they worked together. Barreto emailed Villalobos about it, who in turn escalated the matter and an investigation was opened. After investigating the matter, T-Mobile found Plaintiff had violated the company's sexual harassment policy, which he was well aware of due to a previous incident in 2018. During the investigation, Plaintiff's co-workers Barreto, Morales, Díaz and Rivera were interviewed and all corroborated Morales' complaint. They said, among others, that Plaintiff was constantly engaging in inappropriate conduct in the workplace, including unwanted touching and making sexual comments and innuendos, particularly towards Morales and Barreto, and several of them felt uncomfortable with his actions. This conduct on behalf of Plaintiff prompted T-Mobile to terminate him.

The Court's role at this juncture "is one of screening, that is, to determine whether, on particular facts, a reasonable jury could reach such a conclusion." Noviello v. City of Bos., 398 F.3d 76, 94 (1st Cir. 2005). The "Last Man Standing" chat is full of crude innuendos and comments of an explicit sexual nature, as demonstrated in the screen shots of the chat submitted by T-Mobile. Plaintiff cannot deny that he fully engaged in this type of inappropriate conduct, when he texted comments such as the following: "I like those eyes, they look like two penises"; "Get out because here comes "la Caballota, la Perra, la Diva, la Potra";[3] called himself a bitch ("perra") and referring to Barreto, wrote

---

[3] Referring in Spanish to "the mare, the female dog, the diva, the female pony", as used in a popular rap song by Puerto Rican artist Ivy Queen.

"he thinks he is a bigger a bitch than me" ("se cree que es más perra que yo"); "Oh, I'm horny" ("ay estoy bellaca"); "I want to taste Jeruel's" (referring to his penis), "I am growing tired of the same old thing" and "your stories excite me"; "Babe, that feels so good, put it all in me"; and posted stickers that said "bread and dick, that's what there is" ("pan y bicho, eso es lo que hay"). (D. Exhibits 9 and 23). Plaintiff went further and on one occasion recorded his co-worker Morales, zooming on his genital area and uploading it to the chat. Id. Therefore, T-Mobile has set forth a legitimate reason for terminating Plaintiff.

The ball now in Plaintiff's court, he must identify probative evidence that the reason given by T-Mobile for its action is pretextual. In other words, that it was not the true reason but is instead a pretext for discrimination, and that Plaintiff's sexual orientation was the true motivating factor. Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000); see also Franchina, 881 F.3d at 53.

Plaintiff comes up short in this endeavor, offering only his self-serving denial that he did not engage in any sexual banter or harassing behavior with his co-workers, arguing instead that the actions undertaken by T-Mobile were a plot against him fueled by homophobia, and that everyone had it against him because he was a homosexual. In other words, Plaintiff's position is that co-workers Rivera, Barreto, Ríos, and Morales were all lying, as were supervisors Ayala and Villalobos, all because of Plaintiff's sexual orientation. Nevertheless, Plaintiff points to nothing in the record to buttress his allegations besides his self-serving word. This is insufficient at summary judgment stage. See Alberti v. Univ. of Puerto Rico, 818 F.Supp.2d 452, 478 (D.P.R. 2011), aff'd sub nom. Alberti v. Carlo-Izquierdo, 548 F. App'x 625 (1st Cir. 2013) ("Plaintiff's evidence consists

of blanket denials, speculation and conclusory allegations which are insufficient to defeat summary judgment," and finding plaintiff failed to offer supporting evidence to create a controversy of fact as to defendant's proffered reasons); <u>Castro-Medina v. Procter & Gamble Commercial Co.</u>, 565 F.Supp.2d 343 (D.P.R. 2008) ("However, we note that the only evidence she provides in support of these conclusory allegations is her own deposition testimony, without any explanation or reference to evidence. 'Summary judgment cannot be defeated by relying on such conclusory allegations.'") (quoting <u>Ríos-Jiménez v. Principi</u>, 520 F.3d 31, 42 n. 7 (D.P.R. 2008)).  In short, Plaintiff cannot deny that he engaged in the conduct he is accused of and cannot point to anything concrete that helps him move past the pretext threshold.  Thus, Plaintiff is unable to rebut T-Mobile's proffered reasons.

T-Mobile additionally proffers that, in contravention to the clear company's policy, Plaintiff never reported any harassing conduct against him due to his sexual orientation and never complained in writing with Human Resources about any harassment, homophobia or discrimination towards him.

Plaintiff attempts to create an issue of fact as to this matter, asserting that he complained to Villalobos when he sent her the draft letter titled "Personal and labor harassment."  This attempt falters, as Plaintiff himself admitted that this communication contained no mention of his sexual orientation and dealt only with the issue of the sale with Barreto.  Furthermore, Plaintiff specifically told Villalobos not to share or send the letter to management, as he wanted to keep it for later use if it became necessary.  Thus, the Court cannot find that Plaintiff complained to Villalobos about his sexual orientation with this draft letter in accordance with the company's policy.

Plaintiff additionally tries to argue that he followed the grievance procedure by complaining to Pérez and he never complained to Human Resources because he was dismissed from the company before he had the opportunity to so do.  Nonetheless, Plaintiff admitted that, although the alleged harassment had been ongoing since the incident with Barreto in January 2020, he never lodged a formal complaint with the company, which leaves this defense wanting.

The company's manual indicates that an aggrieved employee may complain to any member of management or to Human Resources, who will then refer the complaint on to the Evaluating Committee. (D. Exhibit 3).  It further indicates that said communication line is not exclusive, as the employee can also directly approach any member of the Evaluating Committee as well.  (Id.)  As to discrimination, the manual states the employee must communicate with the Human Resources VP.  (Id.).  If no response is received, the employee can go directly to the office of the President.  (Id.).  Plaintiff did none of these.  To come now and argue that he was prevented from going to Human Resources when he had ample time to so do simply rings hollow and cannot serve to cast doubt on T-Mobile's proffered reason.  See Menzel v. W. Auto Supply Co., 848 F.2d 327, 329 (1st Cir. 1988) (the relevant question is simply whether the given reason was a pretext for illegal discrimination); see also Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria-Puerto Rico, 404 F.3d 42, 45 (1st Cir. 2005) (pretext means "deceit - a lie - a made-up story 'to cover one's tracks.'").  Plaintiff has shown no such deceit or lies in this case and can offer no explanation as to why T-Mobile's actions were discriminatory.  Moreover, Plaintiff offers absolutely no argument as to why his actions did not violate the company's code of conduct.

If more was needed, Plaintiff also had the opportunity to directly complain to Ayala when he was contacted during the official investigation.  However, in Plaintiff's interview, he denied that he ever perceived or participated in conduct contrary to company policy, stated that the work environment was normal, denied he or any of the other employees used foul language or made sexual comments at work, and denied having any situation with coworkers (except "normal sales situations"). (D. Exhibit 17).  Most of this testimony is belied by Plaintiff's own posted comments in the chat.

On this record, the Court cannot find that Plaintiff engaged in T-Mobile's grievance procedure to complain about any harassment or that he was suffering from discrimination based on his sexual orientation.  It is Plaintiff's burden at this juncture to present evidence that the conduct complained of was done *because* of his membership in one of the categories protected by the cited federal provisions.  See Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 118 S.Ct. 998 (1998).  To simply aver that he was discriminated and harassed due to his sexual orientation, without more, is insufficient.

In sum, the Court's role at summary judgment is to determine if there are triable issues of material fact by considering whether a reasonable jury could find for the nonmoving party based on the admissible evidence.  Scalli v. Citizens Fin. Grp., Inc., Civil No. 03-12413-DPW, 2006 WL 1581625, at *3 (D. Mass. Feb. 28, 2006).  In the present case, taking the evidence in a light most favorable to Plaintiff, no reasonable jury could conclude Plaintiff was subject to a hostile work environment or was discriminated against on the basis of his sexual orientation.[4]  The Court also finds Plaintiff failed to avail himself

---

[4] The Court also finds persuasive the cases from other Circuits submitted by T-Mobile, which hold that a plaintiff cannot create a genuine issue of material fact about unwelcome behavior when he engages in the conduct complained about.  Gibson v. Concrete Equipment Company, Inc., 960 F.3d 1057, 1064 (8th Cir. 2020); Beard v. Flying J, Inc., 266 F.3d 792, 798 (8th Cir. 2001) and Scusa

of the company's procedures regarding sexual harassment and discrimination. Finally, the Court finds Plaintiff is unable to rebut T-Mobile's proffered reason for his termination.

For all these reasons, T-Mobile's Motion for Summary Judgment, as to the hostile work environment, is GRANTED.

2. Discriminatory discharge.

To prevail on this claim, Plaintiff must show that: (1) he is a member of a protected class; (2) he performed his job in a satisfactory manner; (3) he was subjected to an adverse action; and (4) the position was filled by a person whose qualifications were similar to his. Pedraza Meléndez v. Ethicon, LLC, Civil No. 21-1249 (PAD), 2023 WL 2771768, at *9 (D.P.R. Mar. 31, 2023); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). Once a *prima facie* case is established, a rebuttable presumption of discrimination arises, placing on the employer the burden of articulating a legitimate, non-discriminatory reason for the action at issue. Id. Once done, the employee must rebut the given reasoning. Id.

T-Mobile avers Plaintiff cannot meet prong number two (2), that he performed his job satisfactorily, considering that he was engaging in sexual harassment in open violation of company policy. Even if Plaintiff could meet the *prima facie* elements, T-Mobile offers the same reasoning as in the previous hostile work environment claim. It has put forth a legitimate, non-discriminatory business reason for terminating Plaintiff's employment, to wit, that he was engaged in inappropriate conduct and subject to termination. Plaintiff also failed to avail himself of the company's mechanisms to report harassing conduct.

---

v. Nestlé U.S.A. Co., 181 F.3d 958, 966 (8th Cir. 1999). There is no doubt that the chat in question establishes that Plaintiff was engaged in the very same behavior he now cries foul about.

Plaintiff's position, again, is that he was terminated on the basis of a bogus and fabricated investigation, all because of his sexual orientation.

In the end, the Court must dismiss this claim as well, for the same reason already explained above. Plaintiff was not performing his job in a satisfactory manner as he was openly harassing other co-workers in violation of company policy and was therefore terminated, a reason which Plaintiff has been unable to rebut.

Courts have found unsatisfactory work performance to be enough "to enable a rational factfinder to conclude that there existed a nondiscriminatory reason" for corrective action and ultimately, dismissal. See García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) (deficient performance); Meléndez v. Autogermana, 622 F.3d 46, 51-52 (1st Cir. 2010) (failure to meet sales quota); Menzel, 848 F.2d at 331 (violation of company policy); Bennet v. Watson & Wyatt & Co., 136 F.Supp.2d 236, 246 (S.D.N.Y. 2001) (lateness); Caldareri v. Citibank, N.A., Civil No. 15-2069 (JAG), 2018 WL 11417012, at *47 (D.P.R. June 26, 2018) (absenteeism and inability to perform the main aspects of her job). As such, T-Mobile has established ample justification for its action.

As in the case of the hostile work environment claim, Plaintiff has failed to bring forth competent evidence to demonstrate that he was dismissed because of his sexual orientation. See Domínguez-Cruz, 202 F.3d at 431 (the issue is whether, viewing "the aggregate package of proof" offered by plaintiff, he "has raised a genuine issue of fact as to whether the termination was motivated by [sex] discrimination"). In fact, Plaintiff fails to offer any argument whatsoever as to his participation in the chat, and resorts to simply pointing the finger at others. Merely uttering blanket denials as to everything, coupled with fact that he is a homosexual, is not enough to rebut summary judgment.

Consequently, T-Mobile's Motion for Summary Judgment, as to the discriminatory termination claim, is GRANTED.

### 3. Retaliation.

A claim for retaliation requires a plaintiff to argue that "[he] undertook protected conduct," defendants "took a material adverse action against [him]," and "a causal nexus exists between elements one and two." Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013). "An employee has engaged in activity protected by Title VII if [he] has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)); Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 24 (1st Cir. 2014).

For purposes of this case, protected activity entails complaining of discrimination. Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 36 (1st Cir.2011); Fernández-Ocasio v. WalMart Puerto Rico Inc., 94 F.Supp.3d 160, 170 (D.P.R. 2015). Internal complaints constitute protected activity if, like here, the employee complains of discrimination on an impermissible ground. Ponte v. Steelcase, Inc., 741 F.3d 310, 321–22 (1st Cir. 2014).

A plaintiff can establish a *prima facie* case of retaliation showing that "(1) [plaintiff] engaged in protected conduct; (2) [plaintiff] suffered an adverse employment action; and (3) that a causal nexus exists between the protected conduct and the adverse action." López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 28 (1st Cir. 2023)(cleaned up). "Once the plaintiff makes out this *prima facie* case, the burden shifts

to the defendant to articulate a legitimate, non-retaliatory explanation for its actions." Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015). Once done, Plaintiff must "point to specific facts that would demonstrate" to a reasonable jury that T-Mobile's actions were a "sham or pretext intended to cover up." Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 118 (1st Cir. 2024).

T-Mobile contends that Plaintiff fails to establish the first prong of the *prima facie* case, insofar as he cannot establish that he engaged in protected conduct. Even if Plaintiff did, he fails to establish that he was dismissed for his participation in the protected conduct, and no reasonable causal connection can be drawn between the conduct and the adverse employment action.

Plaintiff proffers he was retaliated against for lodging his complaint against Barreto and because he complained to manager Pérez about being harassed at work in July of 2020.

The complaint against Barreto and its aftermath do not fall into the realm of protected conduct. In January 2020, Plaintiff complained to Villalobos after a sale he believed should have been attributed to him was instead given to Barreto. As a result of this, the sale was changed and attributed to Plaintiff, after which Plaintiff proffers Barreto began a harassment campaign against him. Some months later, on April 6, 2020, Agosto wrote to Villalobos via text that he had drafted a "hot letter" which he was saving for later use. Plaintiff asked Villalobos not to send it, but let her read it. As admitted by Plaintiff, the letter mentioned nothing about Plaintiff's sexual orientation, as it was related to matters only regarding the sales' incident.

Plaintiff does not specify which of these two (2) instances resulted in the retaliation. The matter regarding the sale is a non-issue, insofar as it actually helped Plaintiff. Forgetting for a moment that said grievance had nothing to do with Plaintiff's sexual orientation, the complaint to Villalobos about the allegedly stolen commission resulted in the company attributing the sale to Plaintiff instead of Barreto.

As to the draft letter he sent to Villalobos, the Court finds it does not amount to protected activity under Title VII either. Although the draft letter complains about an unwelcome work environment, nowhere does it mention Plaintiff's sexual orientation and Plaintiff specifically asked Villalobos not to share it with anyone. Plaintiff further admits this communication did not mention his sexual orientation. For this reason, it cannot be considered protected activity.

The complaint to Pérez, if made, could be considered protected conduct depending on that it consisted of, but there is nothing on this record to indicate that it was ever made. Pérez testified in his deposition that in July 2020, Agosto spoke to him about changing to another store, without further detail. As previously mentioned, to defeat a motion for summary judgment, the non-movant "must tender "significant probative evidence." First Natl Bank v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593 (1968); Balser v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE) Loc. 201, 661 F.3d 109, 118 (1st Cir. 2011) ("Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment"). Plaintiff offers nothing in support of his claim that he complained to Pérez about the work environment because of his sexual orientation.

Even if the conversation with Pérez could be considered protected conduct, this claim still falters for the same reasons already discussed, insofar as T-Mobile has put forth a legitimate non-discriminatory reason for Plaintiff's dismissal, which Plaintiff has been unable to rebut.  There is simply nothing in this record to establish that Plaintiff's complaints were the "but-for" reason for his termination.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S.Ct. 2517, 2533 (2013) (finding that in a Title VII retaliation claim, the plaintiff must show that the protected activity was the but-for cause of the adverse employment action); Kinzer, 99 F.4th at 115 ("A reasonable jury must be able to conclude that retaliatory animus was the but-for cause of the adverse action.").  As with his other federal claims, Plaintiff is unable to clear this hurdle and his retaliation claim also fails.  Thus, T-Mobile's Motion for Summary Judgment of the retaliation claims is GRANTED.

In sum, in the absence of any "evidence from which a reasonable jury could infer, without the most tenuous insinuation" that T-Mobile's legitimate, non-discriminatory reason for terminating Plaintiff was actually a pretext for sexual orientation discrimination, T-Mobile is entitled to summary judgment on all the federal claims. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 826 (1st Cir. 1991).

In view of the above, Plaintiff's Title VII claims for hostile work environment, discriminatory discharge and retaliation are hereby DISMISSED WITH PREJUDICE.

### C.  State law claims.

Plaintiff additionally invoked the Court's supplemental jurisdiction to entertain state law claims for unjust dismissal pursuant to Law No. 80 and under Puerto Rico Laws

100, 69, and 115, the local counterparts to federal anti-sex discrimination and retaliation statutes, and for damages under Article 1536 of the Puerto Rico Civil Code of 2020.

T-Mobile requests the dismissal of these claims in its dispositive motion, but Plaintiff failed to offer any arguments in support of them in his Opposition.  For this reason, T-Mobile's Reply submits these claims should be deemed abandoned and waived. Plaintiff tries to salvage this situation in his Sur-reply by arguing he did not abandon the Law 80 claims notwithstanding he offered no argument in support of them, and that the Court should nevertheless consider them.  This, he says, is because the Federal Rules of Civil Procedure should be liberally construed.  Plaintiff claims that, since has offered sufficient evidence of discrimination and retaliation as to his federal claims, this evidence must be "incorporated by reference" into the Law 80 claim.  He only makes this argument, however,  as to the Law 80 claims and does not even mention the claims under Law 100, Law 69, Law 115 nor the tort claims under Article 1536 of the Puerto Rico Civil Code.  The Court declines Plaintiff's invitation, as it is not the Court's job to do counsel's work.

This District, as well as the First Circuit, has consistently held that that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived".  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); González-Cabán v. JR Seafood Inc., 48 F.4th 10, 18 (1st Cir. 2022) ("Because González-Cabán has failed to develop arguments regarding these other theories of liability, we consider them waived"); Brown v. Wells Fargo Home Mortg., Inc., No. 17-1853, 2019 WL 13196159, at *1 (1st Cir. July 3, 2019) ("We deem the arguments under ECOA and Regulation B waived: the opposition to summary judgment did not mention the claims under ECOA and Regulation B or develop any argument"); González v. El Día,

Inc., 304 F.3d 63, 74 (1st Cir. 2002) ("Yet, as El Día points out, Gonzalez failed to oppose dismissal of the Law 80 claim in her opposition to its motion for summary judgment before the district court. Consequently, this contention has been waived"); Xynergy Healthcare Cap. II LLC v. Municipality of San Juan, Civil No. 18-1208 (MEL), 2021 WL 7909145, at *3 (D.P.R. July 1, 2021) (Geodata waived its right to raise these arguments by not timely presenting them at the motion for summary judgment stage); Cosme-Pérez v. Municipality of Juana Díaz, 110 F.Supp.3d 357, 376 (D.P.R. 2015) ("Failure to provide a well-developed argument constitutes a waived argument").

Since Plaintiff did not offer any argument whatsoever as to these causes of action, the Court finds Plaintiff has waived them. Accordingly, Plaintiff's local claims under Law 80, Law 100, Law 69, and Law 115 and for damages under Article 1536[5] are DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, T-Mobile's "Motion for Summary Judgment" (Docket Nos. 35 and 36) is GRANTED in its entirety. All claims raised by Plaintiff are DISMISSED WITH PREJUDICE.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 26th day of June 2024.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE

---

[5] The Article 1536 claims would have been dismissed as a matter of law anyway, insofar as Puerto Rico law bars a party from bringing a claim under Article 1536 if a specific labor law covers the same conduct under which that party seeks damages. Rosario v. Valdés, Civil No. 07-1508 (CCC), 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008). Since Plaintiff filed a claim under Title VII, this precludes his Article 1536 claim.